MELE *vs.* AHUNA *et al.*

NAKEU *vs.* AHUNA *et al.*

BEFORE MCCULLY, J., IN INTERMEDIARY COURT.

JULY, 1882.

By decree of Water Commissioners, plaintiffs were held entitled to water at certain times, sufficient for their taro: it appearing that defendants have diverted a portion of plaintiffs' water, the Court awards damages: but as plaintiffs have not complied with the order of the Commissioners to clean out the water course, and have allowed defendants to neglect to furnish water on the designated days, the amount of damages is proportionately lessened.

DECISION OF MCCULLY, J.

These two cases depend on the same state of facts. The several plaintiffs complain of defendants for damage done to their crops of taro by defendants depriving them of water to which they are entitled.

I take the award of the Water Commissioners to be the ascertainment and definition of the water rights of the parties.

From the testimony, and from a personal examination of the locality, it may be described as follows: The source of the water is a pond named Punahoolapa, with artificial banks of perhaps half an acre in extent, the pond being formed and fed by springs in the bottom. This is within the premises of the defendants, who are rice planters. A flume of boards conducts a portion of the water out of the pond to the east to a section of defendant's rice patches. A ditch leads from the side of the pond between other rice patches, through defendant's land and into the tract occupied by taro patches of sundry owners, the two plaintiffs included. Water can be admitted to the ditch by opening a gap in the wall of the pond, and is distributed to the several taro patches by connections with the ditch.

By the decree of the Water Commissioners the plaintiffs were

held entitled to water on Tuesdays and Fridays, twenty-four hours each day, sufficient for their taro.

The testimony is uniform on the part of the plaintiffs that they have not had it specifically on those two days of every week, and that they have not had sufficient for their crops at whatever time it has run, and that in consequence of the want of water their crops of taro have rotted and became a loss to them.

The defendants do not deny that the crops have been injured, and do not maintain that they have had water enough, but allege, in testimony, that the plaintiffs failed to get water, in part because they have neglected to keep their own water courses free from growth, whereby the water would not run to their patches; in part because they had refused to carry out the decree of the Water Commissioners which directed that the plaintiffs should unite with the defendants, contributing an equal amount of labor, in clearing out the rushes and other swamp growth which had overgrown the pond and choked the springs. It is in proof and not denied that the plaintiffs have not carried out this part of the decree, nor have they paid the defendants the equivalent, as the commissioners prescribed, of one dollar a day per man, and it is in proof and not denied that the defendants have done work in clearing out the pond to the value of $408.70. There is an admission on the part of Ahwo, one of the defendants, and the manager of the place, that as summer has advanced water has become scarce, much less now than before; and the principal defendant (Ahuna) testifies that it has been quite dry (weather) the last two months, and that he has had to use more water in his rice plantation, giving to the natives (plaintiffs) what he did not require.

The plaintiffs and their witnesses further testify that the defendants turned off water which might have run through to the taro patches into a reservoir of some description where it was of no value for irrigation to either party. The defendant's witnesses testify that this diversion was from their own ditch, and not of water which might avail the plaintiffs. My ex-

amination of the place, in company with the parties, shows that this water comes from the ditch which feeds the taro patches, runs through two small rice patches of defendants and into a sink hole in the coral rock where it is lost for irrigation, though some use of it is made as a pool for washing clothes. It is all within the defendant's premises. Some of the water running to the sink hole was said to be from another source than the Punahoolapa and the ditch from there to the taro patches, and to have been carried across this ditch by a short flume. Upon examining in this respect I find that this outside water forms a small part of this contribution, the most of the water which may have been carried across in the flume coming through the rice patches from the second outlet of the pond near the one which feeds the ditch, the greater portion, though, coming from the pond via the main ditch.

In any view there is a diversion here of water by the defendants, which is much needed by the plaintiffs, and I am unable to find in the testimony, or by a view of the premises and hearing at that time anything which the parties wished to represent, why this diversion of water should have been made. The plaintiffs' taro was suffering for the want of it. Washing could have been done elsewhere. This diversion strongly induces the opinion that the defendants have acted in disregard of the plaintiffs' rights. This in addition to what may be called the pressure of the situation. The area cultivated in rice is larger than that cultivated in ancient times with taro, the defendants having bought new land under cultivation with a water crop, and at the same time the water supply has probably diminished with the progressive drying of the country and the advance of summer. The defendants have the water pond on their premises and within their control. Their crop demands the water and they help themselves first.

On the other hand, the plaintiffs have not carefully followed their prescribed rights and duties as defined by the Water Commissioners. They do not seem to have asserted their rights on the two days per week given them for watering, and they have not performed the labor prescribed to be done on certain days in

clearing out the spring, whereby the supply would be made sufficient for all entitled thereto. They say for this that they were not summoned to work by the defendants, which the defendants deny, and that they did not feel authorized to enter the defendants' premises and take the water which belonged to them. But they must have seen the defendants performing that labor on the pond by which a supply of water was to be procured for both parties, and they chose to stand by, doing nothing, yet ready to avail themselves of the results of defendants' labor.

But as the decree of the commissioners gave the plaintiffs "sufficient water," and as it is presumable that the taro patches had had water from ancient times, and that there would have been enough for the taro if rice had not been so extensively cultivated, I shall hold that it was the duty of the defendants, having control of the water-head, to let down a sufficient supply for the plaintiffs on their assigned days, and that having, as the proofs stand, failed to do this, and furthermore, having turned off an amount of water which would have availed the plaintiffs measurably, and the plaintiffs having suffered a loss, the defendants are now liable in damages.

The amount claimed in each case is $200, the limit of the jurisdiction of the Court. I take into considerable account the failure of the plaintiffs to do what they might have done towards getting water by carrying out the order of the commissioners to clean out the pond, and in suffering the defendants to neglect to give them their allowance of water on specific days, and so award lower damages.

The plaintiff Mele has less land than Nakeu. I follow the judgment of the District Justice and award him $50 damages, with costs.

The plaintiff Nakeu has ten patches, but they have not all been dried to their damage, some are newly-planted and will not suffer if now duly watered. I adjudge him damages $125 and costs.

*R. F. Bickerton,* for plaintiffs.
*A. S. Hartwell,* for defendants.
Honolulu, July 12th, 1882.